Shauck, C. J.
This is a proceeding in error under section 7306a of the Revised Statutes for the reversal of the judgment of the circuit court and the affirmance of that of the court of common pleas. *75 State v. Budd, 65 Ohio St., 1. It is not a proceeding under sections 7306 and 7308 to present to this court exceptions taken hy the prosecuting attorney to an adverse ruling of the trial court for the purpose of having the law determined to govern similar cases, in which counsel may be appointed to argue the case against the prosecuting attorney. It follows that although counsel for the accused appear here to vindicate the judgment of the circuit court they are in no sense attorneys for that court.
The pertinent provision of the section of the statute under which the defendants were charged is as follows: “Whoever in the night season maliciously and forcibly breaks and enters any inhabited dwelling-house with intent to commit a felony, or with intent to steal property of any value, shall be imprisoned in the penitentiary during life; but upon recommendation of mercy by the jury shall be imprisoned not more than thirty years nor less than ten years; and whoever in the night season maliciously and forcibly breaks and enters, or attempts to break and enter, any uninhabited dwelling-house, or any kitchen, smoke-house, shop, office, storehouse, warehouse, malthouse, still-house, mill, pottery, factory, water-craft, school-house, church or meetinghouse, barn or stable, railroad car, car factory, station-house, hall or any other building, or attempts to break and enter any inhabited dwelling-house (houses) with intent to steal property of any value, or with intent to commit a .felony, shall be imprisoned in the penitentiary not more than fifteen years, nor less than five years. ’ ’
Counsel for the defendants present the view that the distinction which the statute makes between an inhabited dwelling-house and an uninhabited dwell *76 ing-house, and the imposition of the graver penalty for burglariously entering a house of the former-description, is for the protection of human life, giving consideration to the liability to personal encounters between burglars and occupants who may be in the house when it is entered. No case, they say, can be within that purpose unless the persons-who inhabit the house are actually in it when it is burglariously entered. Since the statute contains-no technical words affecting the question, the purpose of the legislature can be ascertained only by regarding its words as used in their ordinary sense.. If we assume that counsel have stated that purpose' correctly, we must still recur to the terms of the' statute to ascertain what has been enacted for . its-accomplishment, that is, for the protection of human life. Did the legislature contemplate only those collisions which are likely to occur between burglars and persons who are within when they enter? Of did it also contemplate the collisions likely to occur when persons who have been absent from their homes return to find burglars already within? No-suggestion is made which can excuse us from considering the ordinary meaning of the words used by the legislature in defining the offense for which it has provided the graver penalty.
Counsel have diligently, and vainly, searched for like provisions in the statutes of other states.' But. the change in our own statute made by the amendment of 1902 deserves attention. Prior to that amendment, and for many years, the buildings which were the subject of a burglarious entering were, “any dwelling-house, kitchen, smoke-house, shop, office, storehouse, warehouse, malt-house, still-house, mill, pottery, factory, water-craft, 'School *77 house, church or meeting-house, barn or stable, or railroad car, car factory, or station-house.” The change effected by the amendment is to divide dwelling-houses into the two classes of inhabited and uninhabited. To enter a dwelling-house of the former class the graver penalty is affixed, while, as to the penalty, the uninhabited dwelling-house is left in the same category of buildings as formerly. If the general assembly were legislating for the purpose of establishing a distinction upon the ground of the actual presence of persons in, or their absence from the building at ■ the time of entering, it is quite unaccountable that it omitted to make a similar provision as to the other buildings if they should be occupied when burglariously entered; for it is within common observation that in the night season persons are actually within churches and others of the buildings named in the statute. The cases cited by counsel for the defendants in which there has been a construction of statutes relating to dwelling-houses “in which there shall be at the time some human being” do not seem to advance their view. Indeed since the legislature of this state has rejected the words which so plainly bear the meaning for which they contend and has adopted those of a broader meaning, we are forced to conclude that it had a more comprehénsive purpose in view. Unless we substitute words rejected for words used we must regard our statute as comprehending within the graver offense a dwelling-house which, as was this, is in daily use by those who inhabit it although at the precise moment of the burglarious entering they may be temporarily absent on an errand incident to the duties of housekeeping. Conformably with the practice of this *78 court the point decided is stated in the syllabus. The propriety of limiting judicial decisions to the requirements of cases is obvious, for it has been frequently illustrated. But misunderstanding and embarrassment are likely to ensue unless the limitation is because of the presence or absence of facts which are of legal significance. It seems to me that they are likely to ensue in the present case if our decision is so limited as to suggest a resort to time pieces and measuring devices to ascertain the duration or the distance of the absence from an inhabited dwelling-house of those who inhabit it. We agree that the words considered are usepl in their natural meaning, and that meaning is not doubtful. A dwelling-house is a building which by the mode of its construction or reconstruction is suitable for a habitation. An inhabited dwelling-house is such a house used as a habitation. The ordinary use of a habitation embraces the protection and shelter of household goods and wearing apparel whether the inhabitants are present or absent. The proprietor of this dwelling-house was a school teacher. During the school year he inhabited it with his wife. When they went away to return at the close of his vacation, leaving their household goods and deities within its protecting walls and shades, they did not cease to inhabit it. The protection of homes is a subject worthy of legislative attention and the language of this act indicates that such was its purpose. If this view is correct, it is of no legal significance whatever that servants were left in charge of the house during the absence of the proprietor and his wife.

Judgment of the circuit court reversed and that of the common pleas affirmed.

*79 Price, Crew, Summers, Spear and Davis, JJ., concur.
Spear, J.
I am in accord with the judgment, and with the preceding opinion save the suggestion in the last paragraph that the dwelling would have been an “inhabited dwelling” within the meaning of the statute, even though servants had not been left in charge of the house during the absence of the proprietor and his wife. Many definitions of the word “inhabit” are given by lexicographers. As applied to this situation, it seems to me that it is the equivalent of to remain, dwell, or to abide within, as distinguished from to depart from. Adopting this definition an inhabited dwelling is one which is occupied and wherein usual processes of living and housekeeping are going on as contrasted with a dwelling, however furnished, from which the owners have departed for an indefinite stay, leaving no one in charge and in which no housekeeping is at the time being conducted. In my judgment the presence of the serving women, as shown by the record, and the occupancy by them of the house as the place where they at the time dwelt, saves the case for the state.